JOHNSON ET AL., RESPONDENTS, *v.* KATE TOOTLE ET AL., APPELLANTS.

MORTGAGES—SUBROGATION.

A purchaser of mortgaged premises, who agrees to pay the mortgage as a part consideration for the purchase price, upon the representations of the grantor that there are no judgments or liens standing against the grantor or the property, who pays the outstanding mortgage under a mistake of fact, relying upon such representations, and after the payment and discharge of the mortgage, and the execution of the conveyance to the grantee, it appears that there was a judgment standing against the grantor, which was recovered subsequent to the date of the mortgage, and it also appears that the position of the judgment creditor had in no way been changed or altered in any reliance upon the release of the mortgage,—*held*, that the grantee will be subrogated to the rights of the mortgagee, and may have the land sold first in satisfaction of the amount the grantee paid to satisfy the mortgage and costs, and the balance derived from the sale to be applied to the payment of the judgment. *Held*, also, that when the legal rights of the parties have been changed by mistake or

fraud, equity will restore them to their former condition, when it can be done without interfering with any new rights acquired on the faith and strength of the altered condition of the legal rights, and without doing injustice to either party.

(No. 761. Decided March 9, 1897.)

Appeal from the Fourth district court. Hon. W. M. McCarty, *Judge.*

Action by L. Johnson and others against Kate Tootle and others. From a judgment for plaintiffs defendants appeal. *Affirmed.*

*Booth, Lee & Gray,* for appellants.

"Payment by grantee who has assumed the entire mortgage debt completely extinguishes the mortgage; he cannot be subrogated to the rights of the mortgagee and keep the mortgage alive for any purpose." Vol. 3, Pomeroy Equity Jurisprudence, p. 192, sec. 1206 and note; *Winans* v. *Wilkie,* 41 Mich. 264; *Birke* v. *Abbott,* (Ind.) 1 N. E. Rep. 485; 1 Jones on Mortgages, sec. 743; *Bunn* v. *Lindsay,* (Mo.) 7 S. W. Rep. 473; *Shirk* v. *Whitten,* 131 Ind. 455; *Kellogg* v. *Colby,* 83 Iowa 513; *First Nat. Bank* v. *Thompson,* (Iowa) 34 N. W. 184; *Fort Dodge Bldg. & Loan Assn.,* (Iowa) 53 N. W. 283.

"He is thereby made the principal debtor, and the land is the primary fund for payment. If he pays off the mortgage, it is extinguished." Vol 2, Pomeroy Eq. Jur., sec. 797; *Russell* v. *Pistor et al.,* 7 N. Y. 171; *Lilly* v. *Palmer,* 51 Ill. 331; 24 Am. & Eng. Ency. of Law, 255 and notes on page 256; *Bunn* v. *Lindsay,* 7 S. W. 476; *Rubens* v. *Prindle,* 44 Barb. 345.

Payment by one primarily liable ordinarily extinguishes an incumbrance or debt so that no right to subro-

gation arises therefrom.  *Abbott* v. *Kasson*, 72 Pa. St. 183; *Klippee* v. *Shields*, 90 Ind. 81; *Carlton* v. *Jackson*, 121 Mass. 592.

Cancellation of the record when the mortgage has been redeemed, paid, and discharged, is an absolute bar and discharge of the same in the absence of fraud, accident, or mistake.  *Garwood* v. *Eldridge*, (N. J.) 34 Am. Dec. 195; *Liles* v. *Rogers* (N. C.) 37 Am. St. Rep. 627; *Goodyear* v. *Goodyear*, 72 Iowa 328; *Weidman* v. *Thompson*, 69 Iowa 36.

"The fact that a party is ignorant of a recorded judgment is due to his own negligence, against the consequences of which a court of equity cannot relieve him by interfering with the rights of others who are without fault."  *Bunn* v. *Lindsay*, (Mo.) 7 S. W. Rep. 473; *Mather* v. *Jenswald*, 72 Iowa 550.

*Thurman & Wedgewood*, for respondents.

It appears from the agreed statement of facts in this case:  That on the 23d day of December, 1890, Lorenzo Hatch was the owner of the real estate in Vernal, Uintah county, Utah, described in the plaintiff's complaint, which was subject to a lien of a certain trust deed made, executed and delivered by Lorenzo Hatch and wife, on July 29, 1890, to one Little, to secure the payment of $3,000, with interest at 12 per cent per annum from date, to the Deseret Savings Bank, a corporation.  That on December 23, 1890, defendants Tootle, Hosea & Co. recovered judgment against Lorenzo Hatch for the sum of $820 and $75.50 costs in the district court for the First judicial district at Provo, Utah, said district embracing Uintah county, which was situated many miles from Provo.  That on May 23, 1891, the predecessors in interest of the plaintiff the Farmers' Co-operative Association

purchased a portion of the property described in the complaint from Lorenzo Hatch and wife, and agreed, in consideration for such purchase of said premises, and as a part of the purchase price, that said Farmers' Co-operative Association would pay the amount of said trust deed, and release and discharge Hatch from liability therein. That in pursuance of said agreement, and as a part of the consideration for the said premises, and as a part of the purchase price, the said amount due on said trust deed was paid to the Deseret Savings Bank, and the said bank thereafter caused a release and discharge of the said trust deed to be sent to and entered for record with the county recorder of Uintah county, where the premises are situated. That at the time of such purchase and contract made by plaintiffs and their predecessors in interest to which plaintiffs have succeeded in interest, said Hatch represented to said plaintiffs and their predecessors in interest that there were no judgments outstanding against him which were or might be liens upon said property, and no transcript of the judgment aforesaid or any judgment had ever been filed in the recorder's office of Uintah county, and, relying upon the representations of said Hatch that said premises were free and clear from all liens, judgments, and incumbrances, except said trust deed to the Deseret Savings Bank, and having no knowledge whatever to the contrary, the said predecessors in interest of the said plaintiffs purchased said property, and took a deed therefor October 7, 1891. It was further agreed and stipulated as facts in the case that the plaintiffs and their predecessors in interest by their acts had released from the lien of the trust deed all said lands described in plaintiff's complaint except that part conveyed by Hatch to plaintiffs and their predecessors by deed dated October 7, 1891, which land is the subject of

this litigation; that the balance of the land so released has been sold upon appellant's execution, but, outside of the exemption, did not satisfy said execution. It also appears from the testimony that a judgment docket kept in the First judicial district court, where such judgment was entered, contained the names of judgment debtors entered indiscriminately, without regard to any alphabetical order required by the statute. Execution was not issued upon the judgment until September, 1894. The court found the facts substantially as agreed upon. As a matter of law the court found the facts set forth constituted a fraud and mistake such as entitled the plaintiffs to equitable relief, and held, in consequence thereof, that plaintiffs should be subrogated to the rights of the Deseret Savings Bank in and to the trust deed paid by them, and that as such equitable mortgagees the plaintiffs were entitled to have that portion of the premises described in the complaint, and purchased by them, and levied upon by the defendants, sold under such trust deed, and the proceeds thereof applied—First, to the payment of the costs and expenses of this proceeding; second, to the payment of the sum of $3,000, due the plaintiffs; and that the balance, if any, be applied to the satisfaction of the execution of Tootle, Hosea & Co. against Lorenzo Hatch,—and a decree was entered accordingly. From this judgment and decree this appeal is taken.

Miner, J. (after stating the facts):

It appears that when the appellants procured their judgment against Hatch the trust deed was a valid lien upon the property in question for upwards of $3,000, and the judgment was subject to this lien. The respondents purchased the land in good faith, relying upon the repre-

sentations of Hatch that the trust deed was the only incumbrance upon it, and were in utter ignorance of the judgment. They purchased the land, and as a part of the purchase price paid off the trust deed for the benefit of the respondents, and not for the appellants. The position of the appellants in the meantime had in no way been changed. They did not take their judgment, part with any property, nor do any act in reliance upon the release of the trust deed. The respondents were not strangers, volunteers, or intermeddlers, within the rule which denies a remedy by way of subrogation. Under these circumstances, are the appellants in a position where they can take advantage of the mistake and fraud, and be placed in a better position because of it? If the lien of the trust deed is released for the benefit of respondents, the equities of both parties are preserved, and the appellants will have what they had when the judgment was obtained. The promise on the part of the respondents to pay the judgment was solely in consideration that they should obtain and acquire a clear title to the land purchased. As the consideration failed, the promise should not be enforced in equity in favor of appellants, when their position has been in no way changed because of the release of the trust deed. The general principle which runs through nearly all the cases of this character is that, "when the legal rights of the parties have been changed by mistake, equity restores them to their former condition, when it can be done without interfering with any new right acquired on the faith and strength of the altered condition of the legal rights, and without doing injustice to other persons." To apply this principle in this case is to prevent manifest injustice and hardship, and its application will interfere with no superior intervening equities. In *Matzen* v. *Shaeffer*, 65 Cal. 81,

the facts are nearly identical with the facts in this case. In that case it appears that "a purchaser of land subject to a mortgage agreed with the owner and mortgagee to pay off the mortgage debt as part consideration for the purchase. The mortgage debt was paid by the purchaser, and the remainder of the purchase price to the owner, who thereupon conveyed the land to the purchaser. Satisfaction of the mortgage was entered on the record. It was held that the transaction operated as an equitable assignment of the mortgage to the purchaser, and was a lien paramount to that of a judgment entered after the mortgage and before the entry of satisfaction." In the case of *Barnes* v. *Mott*, 64 N. Y. 397, the court held in a similar case that: "So much of the judgment as restores the mortgage upon the premises now owned by the plaintiffs, paid off and satisfied by the devisees of Burr, the then owner, and reinstates the same as a lien upon the mortgaged premises, prior and paramount to the lien of the judgment recovered by Orchard and assigned to the defendant, is clearly right. Upon payment of the mortgage by the then owners of the premises, they were entitled to all the rights of the mortgagee, and to an assignment of the mortgage; and, having caused the same to be satisfied under circumstances authorizing an inference of a mistake of fact, equity will presume such mistake, and give the party the benefit of the equitable right of subrogation. To do so in this case is to prevent manifest injustice and hardship, and interferes with no superior intervening equities." This doctrine is sustained by the great weight of authority, although there are decisions to the contrary. *Barnes* v. *Camack*, 1 Barb. 392; *Pearce* v. *Buell*, 22 Or. 29; *Emmert* v. *Thompson*, (Minn.) 52 N. W. 31; *Gatewood* v. *Gatewood*, 75 Va. 407; *Young* v. *Morgan*, 89 Ill. 199; *Barnes* v *Mott*, 64 N. Y. 397; *Smith*

v. *Dinsmoor*, 119 Ill. 656; *Bryson* v. *Meyers*, 1 Watts. & S.
120, 425; *Hudson* v. *Dismukes*, 77 Va. 242, 247; *Yaple* v.
*Stephens*, (Kan. Sup.) 14 Pac. 222; 2 Warv. Vend. p. 858,
and note 4; Harris, Subr. § 816; *Backer* v. *Pyne*, (Ind.
Sup.) 30 N. E. 21.

Under the facts in this case we are of the opinion that
the respondents are within the rule that whenever it is
equitable that a security should be kept alive for the ben-
efit of one advancing money to pay it off, and new rights
have not attached in dependence of the apparent dis-
charge of the prior security, subrogation will be allowed.
In arriving at this conclusion, we have given due weight
to the able argument on the part of counsel for the appel-
lants to the effect that one who assumes a debt becomes
primarily responsible for it; that payment operates as a
discharge, and that the securities cannot be kept alive for
his benefit. But, under the facts in this case, we cannot
subscribe to a proposition that would work such hardship
and injustice as such a holding would impose upon inno-
cent parties where no new rights have been created on the
faith and strength of the altered condition of the legal
rights. The judgment of the court below is affirmed,
with costs.

ZANE, C. J., and BARTCH, J., concur.