TURLEY-BULLINGTON MORTGAGE CO. v. W. E. BROWN, et al.

Western Section.    Dec. 23, 1926.

Petition for Certiorari denied by Supreme Court May 7, 1927.

1. **Appeal and error. A party has the right to appeal if any part of a decree is rendered against him.**

In an action by complainant to be subrogated to its former position under a former deed of trust where the decree did not provide for certain attorney fees, held that this was ground for complainant to base an appeal, regardless of the fact that it might not have any interest in the other issues of the case.

2. **Costs. The dividing of costs is a matter in the sound discretion of the court.**

The taxing of costs in an equity case lies purely in the discretion of the trial court and will not be disturbed by the appellate court unless the discretion has been abused.

3. **Subrogation. Definition.**

Subrogation is the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debts.

4. **Subrogation. Subrogation is a matter for the Chancellor's judicial discretion.**

The general principle of subrogation is that when the legal rights of parties have been changed by mistake, equity restores them to their former condition when it can be done without interfering with any new rights acquired on the faith and strength of the altered condition of the legal rights and without doing injustice to other persons, and the right to subrogation must be governed by the Chancellor's judicial discretion, according to the dictates of equity and good conscience and consideration of public policy.

5. **Subrogation. Evidence. Evidence held to show plaintiff entitled to subrogation.**

Complainant was the beneficiary in a certain first deed of trust. One of the defendants was the beneficiary in a second deed of trust on the same land. Later the beneficiary in the second deed of trust released its deed of trust and took a new second deed of trust. Thereafter, the beneficiary in the first deed of trust inquired of the beneficiary in the second deed of trust if the original second deed of trust had been released. They advised that it had, but did not advise that they now held a new second deed of trust. Thereupon, complainant executed a new deed of trust and released its former one, held, that under these facts, complainant was entitled to be subrogated to its rights under the original first deed of trust.

Appeal from Chancery Court, Gibson County; Hon. Thos. E. Horwood, Judge.

R. S. Keebler, of Memphis, and Taylor, Adams & Freeman, of Trenton, for appellant.

H. H. Elder and W. R. Landrum, of Trenton, for appellee.

OWEN, J. Complainant is a corporation with its principal office in Memphis, Tennessee. It has filed the record in the instant case for error. The defendants are the Gibson County Bank, a banking corporation of Trenton, Tennessee, A. S. Elder, trustee in a certain deed of trust executed by W. E. Brown and wife, Fannie H. Brown, Mrs. M. L. Brown, all residents of Gibson county, Tennessee, and Mack Morris, a resident of Jackson, Tennessee. T. J. Turley and J. P. Bullington, trustees, are also complainants. The defendant Gibson County Bank perfected an appeal from the decree of the Chancellor, and the defendants Mack Morris and others have filed the record for error.

On June 20, 1917, W. E. Brown and wife of Gibson county executed a mortgage on one hundred and fifty acres of land in said county to secure the complainant Mortgage Company in a loan of $4500. On the same day Brown and wife executed a second trust deed to the Gibson County Bank on the same property mentioned in the first trust deed, and subject to complainant's indebtedness of $4500. This second trust deed was to secure a note payable to said bank for $1256.86, which note was also signed by Mrs. M. L. Brown and Mack Morris. This note, payable to the bank, was due December 2, 1917. On December 2, 1917, the day of maturity, it appears that the note to the bank was endorsed on back: "Interest paid to December 2 ,1919." On February 4, 1918, the note was credited with $500.86; On February 28th the note was credited with $200, leaving a balance due of $556.

On February 10, 1920, W. E. Brown executed a note payable to the Gibson County Bank in the sum of $1981.04. This note was also signed by J. M. Brown, Mrs. M. L. Brown and Mack Morris, surety, being the same makers and surety as appear upon the note dated December 14, 1917. This latter note was secured by a trust deed on the same 150 acres of land that Brown had conveyed in trust to secure complainant in the $4500, and to secure the bank in the $1256, and this trust was made subject to complainant's debt of $4500; and on March 8, 1920 the Gibson County Bank released its old trust on said land. The said bank also had included in its last mortgage or trust deed W. E. Brown's interest in a house and lot in the town of Bradford. Prior to the execution of this second trust to the Gibson County Bank (Mr. A. S. Elder, being trustee in both deeds of trust), W. E. Brown applied to complainant for an increase of his first mortgage loan to the extent of $1500. Complainants made W. E. Brown a new loan, the loan papers bearing date March 8, 1920, and his trust deed was recorded March 17, 1920. Out of the proceeds of the new loan the $4500 and some accrued interest was paid and discharged, and after retaining commissions and attorney's fees, the balance, amounting $1073.50 was paid to Brown.

Before closing the new loan Turley-Bullington Mortgage Company employed the Title Department of the Union & Planters Bank and Trust Company as its agent to examine and insure the title to the property; and Robert S. Keebler, one of the attorneys of said Title Department, having before him an abstract certified only to February 27, 1920, addressed a letter to the Gibson County Bank on March 16, 1920, as follows:

"We have been asked to guarantee a mortgage loan covering W. E. Brown's 150 acres in the 23d Civil District of your county. We find that there is outstanding a trust deed in your favor from W. E. Brown to A. S. Elder, trustee, dated June, 1919, and securing a note for $1,250.86, due December 2, 1919.

"The cancelled note secured by this trust deed has been exhibited to us, and in order that the record may be clear, we desire that you execute a marginal release of this trust deed which you will find in Book 59, page 514.

"Will you please send us the canceled trust deed or the Register's Certificate showing that this trust deed has been released, in order that the information before us may be complete."

Mr. T. K. Happel, vice president and cashier of said bank, replied at the bottom of Mr. Keebler's original letter by giving a certified copy of the marginal release of the bank's trust deed in Book 59, page 514, as aforesaid.

Believing therefore that the Gibson County Bank no longer held any lien against this land, the Mortgage Company closed its loan and disbursed the proceeds.

When complainant discovered that the Gibson County Bank had taken another mortgage for the $1900 or more, and had filed the same a few days prior to complainant's mortgage, complainant filed the bill in the instant case seeking to have its mortgage declared a first mortgage on the ground that it had been deceived and mislead by the letter of the Gibson County Bank written by one of its officers, Mr. T. K. Happel, and if mistaken in its right to have its trust deed or mortgage filed March 17, 1920, declared a lien prior to defendant Bank's, and the sureties on W. E. Brown's note for $1981.04, then complainant prayed that they be subrogated to their former position under said former trust deed which secures complainants in the sum of $4500. The bill also prayed for the foreclosure of the mortgage, for a receiver and for a marshalling of assets so as to require the Gibson County Bank to obtain satisfaction of its indebtedness out of the one-fifth interest of W. E. Brown in the house and lot located in the town of Bradford, which interest had been conveyed in the trust deed to secure the Gibson County Bank and Brown's sureties. Complainants also prayed for general relief.

In its answer to the original bill of complainants Turley-Bullington Mortgage Company, the defendant Gibson County Bank made the following admission:

"Defendant Gibson County Bank admits that it wrote complainant that a marginal release on its old trust deed had been executed by it on March 8, 1920, and admits that in its letter to complainant's attorney it did not mention the fact that it had recorded a new trust deed at the time it had released its old trust deed. Defendant bank states that complainant through its attorney wrote a letter to Gibson County Bank simply asking the question to know whether or not the Gibson County Bank had released its trust deed of date March 8, 1920."

The further insistence was made by the bank that the sureties on W. E. Brown's note knew nothing of W. E. Brown applying for a second loan from complainant, and the insistence was made for the sureties on said note that they would not be bound by any action of Mr. Happel, the vice president of the bank with reference to the letter that he wrote to the attorney of Memphis investigating W. E. Brown's title for complainant.

A number of agreed stipulations of facts are found in the transcript, and we quote from Happel's deposition, as follows:

"Q. 85. Mr. Happel, you have testified that you received this letter from me sent out from Memphis on March 16, 1920. What, if anything, occurred to you to be the meaning of the statement 'We have been asked to guarantee a mortgage loan covering W. E. Brown's 150 acres in the 23rd Civil District of your county? You understand what a title guarantee is, don't you? A. I think I do. Q. 151. You understood that the Union & Planters Bank was in the business of guaranteeing the title to lands which Loan Company took mortgages, didn't you? A. I did. Q. You understood that such loans were made on conveyances of fee simple title, did you not? A. I did. Q. 153. You have been in the loan business yourself, have you not? A. Yes, sir. Q. 154. And you understand fully the process under which these matters are handled? A. I do. Q. 155. You understood that the Union & Planters Bank desired to be assured that your old trust deed in Book 59, page 514 had been released of record, so that the mortgage, which they were asked to guarantee might constitute a paramount lien on the property, didn't you? A. I paid very little attention to the first part of your letter of March 16, 1920, and set about to get the information requested in the latter part of your letter. Q. 157. Did it occur to you then that the bank was guaranteeing a third or fourth mortgage on the property? A. It did not. Q. 158. What did occur to you? A. As stated above, I paid very little attention, if any, to the first part of your letter and only set about to

get the information as requested. Q. 159. Isn't it a fact that you released your old trust deed immediately after placing of record the new, and on the same day? A. It is a fact. Q. 166. You knew that the bank wanted this old trust deed out of the way, didn't you, so that it might have a clear title to that 150 acres? A. I knew they wanted the old one out of the way. Q. 171. Why did you think the bank was anxious to have your old trust deed released? A. I did not know why. Q. 172. And you didn't think at all? A. No, sir. Q. 173. Do you generally reply to letters without thinking? A. I did in this case. Q. 174. If you had thought, would you not have advised the bank if you had volunteered any information at all that you had taken the new trust deed at the time you released the old one? A. Possibly so.''

Upon the hearing the Chancellor ordered the trust deeds foreclosed and found the following facts:

''The court further finds that before disbursing the proceeds of said renewal loan, the complainant company employed a title guaranty company to examine and guarantee the title, and that the attorney of said title guaranty company wrote a letter to the Gibson Couny Bank on March 16, 1920, inquiring whether it had released of record its trust deed in Book 59, page 514, stating that they had been asked to guarantee a mortgage loan covering W. E. Brown's 150 acres of land, and that in order that the records might be clear, they desired the execution of a marginal release of said old trust deed held by the bank, and they requested the bank to send them the cancelled trust deed or Register's Certificate showing the release of same in order that the information before them might be complete. The court finds that said bank, replying to said inquiry, merely sent a statement showing the release of the bank's old trust deed, and made no mention of the concurrent recordation by the bank of a new trust deed covering the same security and securing a larger indebtedness. The court finds that the complainant company, relying upon the information that the trust deed of the Gibson County Bank had been released, and believing by reason of said letter that said bank claimed no further lien against said land, proceeded to disburse its new loan. The court finds that the reply of the defendant bank to the letter of complainant company's agent aforesaid, was calculated to misguide and deceive the complainant company as to the existence of a new trust deed held by the bank against the same security; and that in fact the complainant was misguided and deceived, and acting in full reliance upon the supposed fact that the defendant bank had no lien whatever against the property; but the court finds that the complainant was in some measure at fault for not making an independent subsequent examination of the public records.''

The court proceeded to render judgment against Brown in the sum of $7680.80 with interest from the date of the decree, which was rendered February 16, 1926. The court held that complainant was entitled to a marshalling of the securities held by the defendant bank and the court further held that complainant was entitled to be subrogated to the position held by it under its first mortgage, which was recorded in Book 59, page 512 of the Register's Office of Gibson county. The decree further provided that unless the judgment was paid within ten days the Clerk and Master would proceed to sell the land described in the complainant's trust deed.

Complainant excepted to this decree insofar as it did not give it a lien for its entire debt on the 150 acres of land. The Gibson County Bank also excepted to the action of the court in allowing the complainant to be subrogated to its first mortgage in the sum of $4500 and interest thereon. Both parties prayed an appeal at the date of this decree, but the appeal was denied until the coming in of the Clerk's and Master's report of sale. It appears that the sale was made according to the decree of the court and on September 24, 1926, a decree confirming the sale was entered. It appears that W. E. Brown's interest in the house and lot in Bradford was sold to T. K. Happel for $1. The 150-acre-farm was sold to Dudley D. Saunders for $6750. Both purchasers complied with the terms of the sale. A writ of possession was directed to place the purchaser of the 150-acre-tract of land in possession. The decree further recites:

"It appearing to the court that the purchaser of said 150-acre-tract of land is the owner and holder of the indebtedness which has been heretofore adjudged a prior lien on same, upon the payment of the proper costs as adjudged and any necessary balance, the Clerk and Master will cancel the purchase money notes and deliver them to said purchaser."

\* \* \* \* \* \* \*

"The defendants, Gibson County Bank and Mack Moris, except to the decree of the court, and so much of the decree of the court heretofore entered as holds that the defendant Gibson County Bank is not entitled to any excess against the one hundred and fifty acres of land until the judgment of the complainants against the defendant W. E. Brown is satisfied in full and so much of the interlocutory decree of the court as adjudges that the lien of the defendant, Gibson County Bank's trust deed of record in Book 62, p. 118, is not prior and superior in all respects to the lien of the complainant's trust deed and to the decree of the court holding that the complainant is entitled to the net funds in the hands of the receiver, and the prayer for the appeal heretofore denied to each of the parties until the coming in of the master's report of sale and the entry

of the final decree and order of disbursement thereon, is now to the defendants and each of them granted to the next term of the Court of Appeals at Jackson, Tennessee, on condition that they or any one of them enter into an appeal bond conditioned as required by law within thirty days from the adjournment of court.

"The complainant's appeal from the decree of the court in decreeing and adjudging that the Gibson County Bank is entitled to any excess against the said 150-acre-tract of land until the judgment of complainant against W. E. Brown is satisfied in full, which appeal is to the next term of the Court of Civil Appeals at Jackson, Tennessee, is now granted to the next term of the Court of Civil Appeals, at Jackson, Tennessee, on condition that they enter into bond within thirty days as required by law."

The complainant has assigned three errors: (1) The court erred in not decreeing complainants entitled to priority over the defendants for their full amount of the indebtedness due from W. E. Brown; (2) the court erred in not allowing complainants reasonable attorneys fees as provided in the trust deed; (3) the court erred in taxing complainants with any cost.

The defendants have assigned four errors, which errors raise but two propositions, viz:

(1) It was error to subrogate complainant to the position it held under the trust deed executed by W. E. Brown to secure complainant in the sum of $4500.

(2) If complainant was entitled to be subrogated under said trust, then the amount allowed was excessive. Complainant should have allowed interest from March 8, 1923; whereas the Chancellor allowed interest from March 8, 1920.

The third and fourth errors assigned are, in substance, the same as the second.

Defendants insist that complainant is not entitled to the writ of error sued out in this cause, because the record shows that it has no interest in this law suit. Defendants have moved to dismiss said writ of error, and bases its motion on that part of the decree which recites and adjudges that the recovery belongs to the purchaser of the land D. D. Saunders, and the Turley-Bullington Company can have no interest in this appeal and they have no right to prosecute this writ of error.

We are of the opinion that complainant has a right to complain on the question of attorney's fees and the question of cost adjudged against it. As to the other assignment of error, there is grave doubt as to whether it should be considered, or not. On the question of attorney's fees, the complainant was not subrogated to the old note of $4500, but only to the amount owing by W. E. Brown on March 8, 1920. It was not restored to its former position as the owner and

holder of said notes. Brown's notes to complainant were surrendered and canceled. The notes were never placed in the hands of an attorney for collection. Furthermore, there was no exception to the decree of the lower court in not granting an attorneys' fee. There is nothing in the decree indicating that the Chancellor passed upon the question of attorney's fees, but assuming that he denied complainant a recovery for attorneys' fees, his action is not error, and the second assignment is overruled.

On the question of dividing the cost, this was a matter in the sound discretion of the court, and we think under the facts in this case his discretion was not abused.

Mr. Gibson, in his suits in chancery, section 570, gives a number of cases where it would be hardly equitable to onerate either party with all the costs, and one such case is where the complainant succeeds, but is negligent of matters affecting the interest of the defendant, who was an innocent sufferer in the transaction. Another is where the complainant fails to prove an alleged fraudulent conveyance but establishes his debt; the complainant failed to prove all of its allegations; failed to establish all of its claim sued for. By sections 4962 and 4962-A, Shannon's Code, it is provided that the court make such disposition of the cost as in its sound discretion may seem right, if any case shall occur not directly or by fair implication embraced in the express provisions of the law; and we are of the opinion that the instant case as to the question of taxation of cost falls within the discretion of the Chancellor, and that discretion has not been abused in adjudging the cost accrued in the lower court, and complainant's assignment of error as to cost is overruled.

The main question in this law suit is whether or not complainant is entitled to subrogation. In 37 Cyc., 363, it is said: "Subrogation is the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debts. The doctrine is one of equity and benevolence, and like contribution and other similar equitable rights was adopted from the civil law, and its basis is the doing of complete, essential and perfect justice between all the parties without regard to form, and its object is the prevention of injustice. The right does not necessarily rest on contract or privity, but upon principles of natural equity, and does not depend upon the act of the creditor, but may be independent of him and also of the debtor."

The application of the doctrine of subrogation is not controlled alone by the Chancellor's conception of right, but its exercise must be governed by judicial discretion; and, in every case where the doctrine is invoked, in addition to the inherent justice of the case,

concur therewith some principle of equity jurisprudence as recognized and enforced by courts of equity. 37 Cyc., 367, and note 11.

In Johnson v. Tootle, 14 Utah, 482, 47 Pac., 1033, it is said: "The general principle which runs through nearly all the cases of this character is that, 'when the legal rights of the parties have been changed by mistake, equity, restores them to their former condition, when it can be done without interfering with any new right acquired on the faith and strength of the altered condition of the legal rights, and without doing injustice to other persons.' "

Under the title of subrogation the following statement appears in 25 Ruling Case Law, p. 1313:

"It is a doctrine therefore which will be applied or not according to the dictates of equity and good conscience, and consideration of public policy, and will be allowed in all cases where the equities of the case demand. It rests upon the maxim that no one shall be enriched by another's loss, and may be invoked wherever justice demands its application, in opposition to the technical rules of law which liberate securities with the extinguishment of the original debt. The right to it depends upon the facts and circumstances of each particular case, and to which must be applied the principles of justice. In the administration of relief by subrogation, it will be found that the jurisdiction of equity rests largely on the prevention of frauds and on relief against mistakes; and the expansion of the rule has so nearly covered the field that it may now be said that, wherever a court of equity will relieve against a transaction, it will do so by the remedy of subrogation, if that be the most efficient and complete that can be afforded."

In Walker v. Walker, 138 Tenn., 682, the Supreme Court approved the following statement in 37 Cyc., 373, to-wit: "The doctrine of subrogation is steadily expanding in its practical administration so as to embrace all cases where complete justice cannot be done without it."

In that case the court further said: "Mistake of fact is ground of equitable relief against payment of a debt of another so as to entitle the one who pays it through mistake to be subrogated to the rights of the payee."

In cases similar to the one under consideration, where relief is granted, it is generally upon the ground of mistake.

In the instant case, Mr. Happel, the vice president of the Gibson County Bank, had no intention of misleading the complainant, in answering complainant's letter with reference to the satisfaction of the trust deed. Furthermore, complainant forwarded the second trust deed of Brown and had it filed for record before it received the letter from Mr. Happel; but complainant did not disburse the fund and really surrender the $4500 note until after it had received

the letter from Mr. Happel. The $4500 note secured by the first mortgage executed by Mr. Brown to secure complainant was in reality never paid. Defendant Gibson County Bank took its second mortgage subject to the $4500 mortgage. In subrogating the complainant to its rights, as it stood with the first mortgage for $4500, the defendant bank is not injured thereby. It appears that Brown deceived both the bank and complainant in the execution of his last two trust deeds. The record indicates Brown is wholly insolvent and that he has left Gibson county, and his address or residence was not known at the time Mr. Happel testified.

One who makes a loan to discharge a first mortgage, pursuant to an agreement with the mortgagor, that he shall have a first mortgage on the same land to secure it, there being at the time another mortgage on the land of which the lender is ignorant, the lender will be subrogated to the rights of the first mortgagee. 37 Cyc., 464; Merchants v. Tilden, 106 Ga., 55.

It is insisted by learned counsel for the defendant that W. E. Brown is insolvent, and if subrogation is allowed the defendant Mack Morris will be the loser as surety on the note of W. E. Brown to the Gibson County Bank, and that the defendant Gibson County Bank was not the agent of Mack Morris in making the statement it made to the Union & Planters Bank and in failing to disclose the existence of the new trust deed. In support of their contention that subrogation should not be allowed to the complainant, counsel cites and relies upon the cases of Workingman's Building & Savings Association v. Williams, 39 S. W., 1019; Lookout Bank v. Aull, 9 Pickle, 646; Nelson v. Kinney, 9 Pickle, 442, and other cases which are reviewed in the three Tennessee cases we have just cited. In all the cases cited and relied on by counsel for the defendant, there is a distinction between the facts and principles announced and the facts controlling the instant case, and these cases are distinguished from the instant case.

In the case of Workman's Building & Savings Association, supra, the association had a first mortgage, and knew there was a second mortgage—the association cancelled its first mortgage. The borrower was the attorney for the association. The association took a second mortgage to it, or a new mortgage. It intended that its new mortgage should be the first lien and depended upon the borrower and its attorney to arrange with the holder of the second mortgage so as to give the association a first lien by reason of its new mortgage. The borrower and attorney said nothing to the holder of the second mortgage. It was held by the Chancery Court of Appeals of this State that the association lost its first lien. The holder of the second mortgage knew nothing about the transaction between the borrower and the association and had no notice that a new mortgage was being executed to the association.

In the instant case, the bank and Morris as security took themselves a second mortgage, or had their trust deed renewed, and for a greater sum than the first trust deed they had from W. E. Brown, and they took this second instrument subject to complainant's indebtedness of $4500.

In the case of Lookout Bank v. Aull, the principle announced therein is to the effect that a note is not given for a pre-existing debt in such sense as to let in defenses against a bona-fide holder who acquired it before maturity, where it is accepted in renewal and satisfaction of an old note with different surety. The note in question was a renewal note, bearing the name of Clift & Aull as sureties. When the note with these two sureties thereon was given to the bank, the bank surrendered a note signed by Clift, Baskett & Albright as sureties. The court held that Baskett & Albright were released. There were different parties interested in the Lookout Bank case, while in the instant case it is the same parties in the first and second mortgages to complainant and the same parties in the first and second mortgages to the Gibson County Bank.

The case of Nelson v. Kinney, supra, holds that a conveyance by a husband to his wife, at a time when he is solvent and without anticipation of insolvency, and without any intent to defraud any existing or subsequent creditors, in consideration of his moral duty to provide for her and to protect her against his recklessness, dissipation and gambling debts is not fraudulent as against the creditors of a firm of which he is a member, whose debts were contracted without knowledge of the property conveyed to the wife; and it was further held in said case that a father has the right upon becoming insolvent and unable to provide for his debts, owing to general financial depression throughout the country, to prefer a debt due his daughter, by conveying property to her in which he has an equitable interest, and such conveyance made in good faith, is not fraudulent as against his creditors or the creditors of a firm of which he is a member.

Without further discussion of the authorities, we are of opinion that the complainant has the right to be subrogated to its old trust for the $4500; that this trust was never satisfied, and in equity and good conscience complainant's claim to this extent should be sustained, and defendant's first assignment of error is overruled.

As to the second assignment of error, we cannot agree with the learned Chancellor in allowing the complainant interest on the $4500 as decreed by him. We are of opinion that this interest was paid until March 8, 1923. Brown paid the interest on the $6000 until March 8, 1923, and complainant should not be permitted to apply all the interest $360 paid per year from Brown—on complainant's principal of $1500, the difference between the $4500 and the $6000.

The second assignment of error is sustained, and complainants will be permitted to recover $4500, with interest from March 8, 1923, to the date of this decree at six per cent, which amounts to ————. The other assignments of error are overruled, as defendants have only raised two questions.

While affirmatively we hold that Mr. Happel did not intend to mislead the attorney of the Union & Planters Bank when he wrote the letter in answer to the attorney's letter in regard to the satisfaction of the defendant bank's mortgage, but the complainant was by this letter mislead. When it came to distributing the $1500 to Brown, the increase in his loan of $4500, and had the attorney for the bank received the information that the defendant bank had released its old mortgage but had taken a new one, complainant would not have released the first mortgage.

This cause will be remanded to the chancery court of Gibson county for the purpose of paying out the funds there in the court and such other orders that may be necessary.

The costs of the appeal will be paid, one-half by complainant and its surety on the writ of error bond, and one-half by the defendant Gibson County Bank, and its surety on appeal bond, for which execution will be awarded.

Heiskell and Senter, JJ., concur.