## SMITH H. LEWIS v. PAUL KOEHN et al. ·

Eastern Section.   May 6, 1927.

No petition for Certiorari was filed.

1. **Costs.   Taxation of costs falls within the discretion of the Chancellor.**
The taxation of costs is within the discretion of the Chancellor and unless it is shown that discretion has been abused, the appellate court will not interfere.

2. **Subrogation.   Subrogation defined.**
The application of the doctrine of subrogation is not controlled alone by the Chancellor's conception of right, but its exercise must be governed by judicial discretion; and, in every case where the doctrine is invoked, in addition to the inherent justice of the case, there must concur therewith some principle of equity jurisprudence as recognized and enforced by courts of equity.

3. **Subrogation.   Evidence.   Evidence held to show plaintiff entitled to subrogation.**
Where the plaintiff had let a contract for the building of a garage and the contractor had given him a bond with a bank as surety and the contractor had given to the bank a note and deed of trust for the purpose of securing the bank for any amount it might have to pay on the bond and the bank had later become insolvent and the contractor had failed in the performance of his contract, held that the defendant was entitled to be subrogated in place of the beneficiary in the deed of trust and to collect thereon to the amount of the bond.

4. **Estoppel.   Where a bank signed a bond as surety for a contractor he can not later urge that the Act was ultra vires.**
Where a bank signed a contractor's bond as surety and required of the contractor a deed of trust to secure it, held that when the owner of the property sought to be subrogated to the bank's interest in the deed of trust, the contractor could not raise the question that the bank did not have power to execute the bond.

Appeal from Chancery Court, Knox County; Hon. Charles Hays Brown, Judge.

Modified, affirmed and remanded.

A. Y. Burrows, of Knoxville, for appellee.

Bowen & Bowen, J. B. Wright, John W. Green and W. R. Henderson, all of Knoxville, for appellants.

OWEN, J.   The defendant Paul Koehn has appealed from a decree rendered against him and others in the chancery court of Knox county.

On August 18, 1925, complainant filed his original bill in the chancery court against Paul Koehn and the Knoxville Trust Company, a corporation.   The bill alleged that Paul Koehn had entered into a contract to erect a building according to plans and specifications of complainant, which building complainant was to use

as a garage and in which he was to conduct a general automobile repair business. The plans and specifications had been drawn by W. H. Gildard, an architect of Knoxville. The contract provided that the building should be constructed within ninety days from the date of the contract, which was February 15, 1924, and the building was to be a complete job and for the sum of $9,000. Complainant alleged that the defendant executed a bond in the sum of $3,000 for the satisfactory performance of his contract, and that the Knoxville Trust Company had signed this indemnity bond as surety. Complainant alleged that the defendant Koehn had breached his contract and complainant had to finish the work left undone by defendant at a cost of $3002.61. On October 7, 1924, complainant filed an amended and supplemental bill against the same defendants and against various other parties who were claiming liens on the garage building. These parties, as alleged by the supplemental bill, were threatening to bring suit to enforce their lien. The object of the amended bill was to bring into the same court and same cause all parties claiming liens and threatening to bring law suits, so as to ascertain their rights and prevent needless litigation.

During the month of October 1924 the defendant Koehn answered the bill denying that he had breached his contract. He admitted that he had entered into a contract to construct the building described in the bill for the sum of $9,000; he denied that complainant had paid $9,000 and by way of cross-bill he alleged that the complainant, in addition to agreeing to pay the sum of $9,000 was indebted to cross-complainant in the sum of $2393.93, for extra work done upon said building and cross-complainant prayed for a lien upon said building.

Complainant answered this cross-bill denying that he was indebted to cross-complainant in any sum and he denied that the cross-complainant had performed any extra work or that any extra work was necessary. The Knoxville Trust Company and its president, J. Albert Robbins, answered complainant's bill and admitted signing a bond or some instrument for Koehn, but insisted that the Knoxville Trust Company was a banking corporation and by virtue of its charter was prohibited from signing any surety bonds; therefore the act of becoming surety for Koehn was ultra vires and the complainant was not entitled to recover upon said bond. Thereupon complainant filed an additional amended and supplemental bill, alleging J. Albert Robbins was surety to said bond, and the additional amended bill was against all of the other defendants. The essence of this second amended bill was that complainant had ascertained that there was more than $6,000 in claims against his building instead of a little more than

$3,000 as alleged in his original bill and he sought a judgment against the defendant Koehn for something over $6,000. He also alleged that Koehn, to secure the Knoxville Trust Company and make it harmless for executing the indemnity bond to protect complainant in the sum of $3,000 had executed his trust deed upon a certain piece of property described in the bill for the sum of $3300, payable to the Knoxville Trust Company, with J. Albert Robbins trustee, and complainant alleged that he had the right to be subrogated to the rights of the security given to the Knoxville Trust Company and that he had the right to have said trust deed executed by said Koehn to J. Albert Robbins, trustee, foreclosed to satisfy complainant's demands.

The second amended bill also alleged that Koehn was insolvent; the Knoxville Trust Company had become insolvent and was being wound up in the bankrupt court at Knoxville. The second amended bill further alleged that the trustee in bankruptcy of the Knoxville Trust Company had not reported the indebtedness of $3300 mentioned in the trust given by Koehn to Robbins, trustee, to secure the Knoxville Trust Company, as an asset of said Knoxville Trust Company. The amended bill described the lot that Koehn had conveyed to J. Albert Robbins trustee; also gave the trust book as No. 307, page 332 of the register's office of Knox county where the trust deed was recorded. It appears that the trust was executed by Koehn on the 28th of February 1924 and was to secure an indebtedness of $3300, evidenced by note due four months after date. The complainant alleged that $3,000 of this $3300 consisted of the contingent liability assumed by the trust company in becoming surety on the defendant Koehn's bond. The remaining $300 represented the trust company's fee charged for its surety, and that the Knoxville Trust Company held said note and trust deed for the purpose of indemnifying itself should the defendant Koehn default in his contract with complainant.

The amended bill also recited that the cause of G. P. Fitz, trustee et al. v. Knoxville Trust Company et al., pending in the United States District Court at Knoxville, provided that all pending suits instituted against the said trust company were permitted to proceed to judgment.

The amended bill also made Josephine Koehn, the wife of defendant Paul Koehn, a party, and the bill as amended prayed for an injunction to prohibit Koehn and his wife from disposing of said property described in the bill.

This second amended bill was answered by all of the defendants. With the issues thus made, complainant took a number of depositions, taking the same at great length. The defendants offered no proof. During the pendency of the litigation the complainant

settled with all of the petitioning creditors and upon the final hearing the Chancellor found that the defendant Koehn had breached his contract; that he had done no extra work for which he was entitled to extra compensation; that complainant had complied with his part of the contract, and that the construction of the building actually cost complainant $15,168.39, and that there was due complainant $6168.39 in excess of Koehn's contract price.

The court further found that the defendant Knoxville Trust Company, a Tennessee corporation with its place of business in the City of Knoxville, had executed an indemnity bond in the sum of $3,000, payable to the complainant, which bond was made for the defendant Koehn, and in order to secure said trust company to become surety thereon, it required of said Koehn to furnish it security, which he did through the medium of a mortgage or deed of trust in favor of said trust company upon certain real estate in Knoxville, Tennessee, which was described in the decree.

The court further decreed that while said bond was outstanding that the defendant Fidelity Trust Company was, about November 26, 1924, appointed receiver of the assets of the said Knoxville Trust Company by order of the district court of the United States at Knoxville, Tennessee, in a general creditor's proceeding instituted and pending in said court, the style of the cause being recited in the decree; and that said Knoxville Trust Company's assets were being wound up as an insolvent corporation. The court further found that neither the Knoxville Trust Company nor its receiver had paid out any money for or on account of its suretyship, nor has it in any other way sustained any loss or damage on account thereof. The court further found that the mortgage executed by Koehn to secure the Knoxville Trust Company created a valid and subsisting lien upon the property described in said trust deed, and that said mortgage was primarily and expressly for the purpose of protecting complainant Smith H. Lewis, and to secure him from loss or damage growing out of acts of the principal Koehn, and that the complainant was the true beneficiary in said mortgage; that complainant, by virtue of the breach of the conditions of said bond by the principal, (the defendant Paul Koehn) together with the insolvency of the surety, the defendant Knoxville Trust Company became subrogated to all the rights, title and interest of the surety and mortgagee, the Knoxville Trust Company, in and. to the mortgage instrument and the property embraced and described there, and that said rights became fixed and determined on the 30th day of April 1924, the date when said Koehn abandoned the said contract and refused to complete the same.

The court further found that the defendant Koehn by his acts was estopped from the date of the delivery of said bond to complainant from questioning the regularity, sufficiency and validity of said bond, and is estopped to question the rights of the complainant in the property mortgaged by him to his surety, the said Knoxville Trust Company, and that he was estopped from denying the right of complainant to be subrogated to all the rights possessed by the said Knoxville Trust Company.

The cross-bill of Koehn was dismissed and he was taxed with all of the cost of the cause. Complainant's bill in all particulars was sustained. The defendant Paul Koehn excepted to the decree of the Chancellor in dismissing his cross-bill and in taxing him with the cost. He also excepted to the action of the court in granting complainant a recovery and holding that the mortgage in favor of the Knoxville Trust Company is valid and binding and inures to the benefit of the complainant. The defendant was permitted to appeal upon executing the oath for poor persons, which he did, and has in this court assigned eight errors, as follows:

First: The court in granting complainant a recovery for the sum of $6168.39, and the cost of the cause.

The second error is covered by the first, or at least insists that the Chancellor should not have granted a recovery for more than $3002 sued for in the original bill.

The third assignment complains of taxing the complainant with all of the cost of the cause, even if the Chancellor's decree should be otherwise correct.

We are of opinion that the word "complainant" in the third assignment is a typographical error and we will treat it as meaning the defendant,—taxing the defendant with all of the cost.

The fourth error complains of the action of the court in subrogating the complainant to the rights of the Knoxville Trust Company.

The fifth is, the Chancellor erred in ordering a sale of the property without directions or instructions as to advertising the same, or the terms on which it should be sold, and especially was the Chancellor in error in ordering the sale to be made by the Clerk and Master and not by the trustee.

The sixth assignment of error is, the Chancellor erred in directing a sale of the property under the trust deed without adjudging definite liability as to the amount, and allowing defendant a reasonable time within which to pay the same before making sale of the property.

The seventh error is, the Chancellor erred in directing and decreeing that the entire proceeds of the sale of the property, when sold, should be credited on the amount of the judgment, or should be

applied to the satisfaction of the judgment, if sufficient to pay the same.

The eighth is, the Chancellor erred in declining to specifically decree that there was no liability on the part of the Knoxville Trust Company as surety on the bond in question.

We find as a fact from the evidence of the complainant, and there is none to the contrary, that the defendant is indebted to the complainant for the amount mentioned in the decree of the Chancellor, and that the defendant breached his contract with the complainant, and the complainant was not at fault.

The defendant has filed a cross-bill seeking to recover more than $2,000 against the complainant and the complainant did not know that the defendant and cross-complainant was not going to take any proof. It is true that there is a large record here, and some unnecessary proof was taken, but the question of taxation of cost falls within the discretion of the Chancellor and that discretion has not been abused in adjudging the cost accrued in the lower court against the defendant. Gibson's Suits in Chancery, sec. 570; Shan. Code, secs. 4962 and 4962-A.

The supplemental bills were necessary pleadings; the complainant was not negligent in filing the two supplemental bills.

It results that the first, second and third assignments of error are overruled.

If the Knoxville Trust Company is wholly insolvent and a bankrupt complainant's bill insofar as seeking a recovery against the Knoxville Trust Company is dismissed. It appears that the Chancellor did not dismiss the bill outright against the Knoxville Trust Company, but took no action against it either way.

The next question is whether or not complainant is entitled to subrogation.

In 37 Cyc., 363, it is said "Subrogation is the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debts. The doctrine is one of equity and benevolence, and like contribution and other similar equitable rights was adopted from the civil law, and its basis is the doing of complete, essential and perfect justice between all the parties without regard to form, and its object is the prevention of injustice. The right does not necessarily rest on contract or privity, but upon the principles of natural equity, and does not depend upon the act of the creditor, but may be independent of him and also of the debtor."

The application of the doctrine of subrogation is not controlled alone by the Chancellor's conception of right, but its exercise must be governed by judicial discretion; and, in every case there the doctrine is invoked, in addition to the inherent justice of the case,

concur therewith some principle of equity jurisprudence as recognized and enforced by courts of equity. 37 Cyc., 367, and note 11.

In Johnson v. Tootle, 14 Utah, 482, 47 Pac., 1033, it is said: "The general principle which runs through nearly all the cases of this character is that, 'when the legal rights of the parties have been changed by mistake, equity restores them to their former condition, when it can be done without interfering with any new right acquired on the faith and strength of the altered condition of the legal rights, and without doing injustice to other persons.' "

Under the title of subrogation the following statement appears in 25 Ruling Case Law, p. 1313:

"It is a doctrine therefor which will be applied or not according to the dictates of equity and good conscience, and consideration of public policy, and will be allowed in all cases where the equities of the case demand. It rests upon the maxim that no one shall be enriched by another's loss, and may be invoked wherever justice demands its application, in opposition to the technical rules of law which liberate securities with the extinguishment of the orignal debt. The right to it depends upon the facts and circumstances of each particular case, and to which must be applied the principles of justice. In the administration of relief by subrogation, it will be found that the jurisdiction of equity rests largely on the prevention of frauds and on relief against mistakes; and the expansion of the rule has so nearly covered the field that it may now be said that, wherever a court of equity will relieve against a transaction, it will do so by the remedy of subrogation, if that be the most efficient and complete that can be afforded."

In Walker v. Walker, 138 Tenn., 682, the Supreme Court approved the following statement in 37 Cyc., 373, to-wit: "The doctrine of subrogation is steadily expanding in its practical administration so as to embrace all cases where complete justice cannot be done without it."

A deed of trust made to secure a surety on a debt, and also to secure the payment of the debt itself, enures to the benefit of the creditor and his right is not affected by a subsequent discharge of the surety from liability in a suit between them. Wood v. Moore, 1 Shan. Cas., 116.

An indemnity or collateral security given by the debtor to his security enures to the benefit of creditors who may file a bill to subject it in equity without first obtaining a judgment at law, and it does not change the rule whether the principal acted on the credit of such security or indemnity in the first instance or not, or even knew of its existence. Kinzy v. McDearmon, 5 Cold., 392; Miller v. Lancaster, 5 Cold., 514; Wallace v. Greenlaw, 9 Lea, 115.

In cases of subrogation a court of equity exercises paramount control, and if property is pledged to either the principal or surety though not the purpose seeking to change it, it may be reached by substitution and the right of the parties settled in one suit, without the expense or delay of two. Minzy v. McDearmon, 5 Cold., 392.

A mortgage executed by a debtor directly to a surety to be void if the debts are paid is for the security of the creditors as well as the surety. Saylors v. Saylors, 3 Heisk., 525.

On the question of ultra vires, the charter of the corporation is not in the record. The presumption is that the Knoxville Trust Company had the power to execute the bond and to become surety for Koehn. Koehn can not raise this question. His act and conduct estop him from so doing. Heisk. v. Chickasaw Lodge, 87 Tenn., 668; Barrow v. Nashville etc. Co., 9 Humph., 303.

Where the question of the right of a corporation to make a lease was involved, the question could not be raised by the lessee. Coal Creek Co. v. Tenn. Coal Co., 106 Tenn., 651; Union Bank v. Wright, (Chy. App.), 58 S. W., 755.

We are of opinion that the complainant is entitled to be subrogated to the rights of the Knoxville Trust Company. It appears that the trustee in said trust deed, J. Albert Robbins, has removed from Tennessee and now lives in Florida and the Chancellor had a right to substitute the Clerk and Master to make the sale of said property of the defendant Koehn. In other words, the decree of the Chancellor declares that the complainant has a lien on the property described in said trust deed and has a right to have the trust deed enforced or foreclosed, and it was not error to order the Clerk and Master to foreclose said trust deed according to its terms, it appearing that the trustee in said trust deed had left the State.

The sale will be made according to the terms and conditions provided in said trust. We are of opinion, however, that complainant will only be entitled to recover out of the sale of said property under said trust deed the sum of $3300, the amount mentioned therein, with six per cent interest thereon from April 30, 1924; that is, the indebtedness secured by said trust deed.

It appears from the record that there is a first mortgage on Koehn's property to secure an indebtedness to S. E. Young, Esquire, in the sum of $1750, and by consent of all parties to this litigation the Young indebtedness had been renewed to the Fidelity Trust Company and the Fidelity Trust Company was to have a first mortgage upon Koehn's property.

Should there be a sale of the property of defendant Koehn, described in the trust deed to J. Albert Robbins, trustee, after pay-

ing the cost of the cause and after paying $3300 and interest thereon from the date heretofore mentioned, and paying or assuming all moneys due the Fidelity Trust Company, by reason of its first mortgage, then, if there should be a surplus it would belong to Koehn's general estate which is being administered in the bankrupt court at Knoxville Tennessee, and complainant for his deficiency between the amount realized upon the bond or indebtedness mentioned in the trust deed would have to take his position as any other unsecured creditor of the said Koehn. In other words, for complainant to be subrogated to the rights of the Knoxville Trust Company he can only recover that which the Knoxville Trust Company could have recovered had it been the complainant, the $3300 and interest, the Knoxville Trust Company is protected in the sum of $3300, and complainant should be subrogated to all of the rights of the Knoxville Trust Company which we hold he is entitled to, but no further. If there should be a surplus over and above the $3300, interest and cost, there might be a question of the dower rights of Josephine Koehn, the wife of the defendant Paul Koehn, in and to said surplus, but it is not necessary for this court to adjudicate any further.

The defendant Paul Koehn will be allowed thirty days from the date of the filing of this opinion in which to pay the $3300, and all interest thereon and all cost of this cause, and by so doing he will avoid a foreclosure sale under said trust deed.

This cause will be remanded to the chancery court of Knox county for the purpose of carrying out this decree, and foreclosing said trust deed if necessary, and collecting and distributing the proceeds.

The seventh and eighth assignments of error are sustained; the other assignments of error are overruled and disallowed, and the decree of the chancery court except as herein specifically modified, affirmed.

The defendant Koehn will pay the cost of the appeal. Modified, affirmed and remanded.

Heiskell and Senter, JJ., concur.